## Ex parte E. F. Davis.

**Arrest and Bail**: AFFIDAVIT: HABEAS CORPUS. Where the facts and circumstances stated in the affidavit upon which an order of arrest is obtained, in arrest and bail, tend to show that the defendant fraudulently contracted the debt to recover which the action is brought, he will not be discharged on habeas corpus upon the ground that the affidavit is insufficient.

ORIGINAL application for habeas corpus.

*E. W. Thomas* and *A. Schoenheit*, for applicant.

*Frank Martin*, contra.

MAXWELL, J.

The petitioner was arrested in proceedings in arrest and bail, Civil Code, Title VIII., Chap. 1, and now seeks to be discharged on habeas corpus upon the ground

that the affidavit for his arrest is not sufficient to jus-tify the arrest.    The affidavit is as follows: "James M. Anthony being first duly sworn, says that he is the duly authorized agent of the above named plaintiff, Amos Whitely, president of the Champion Machine Co., that said plaintiff has commenced an action in said court against the above named defendant, Ed. F. Davis, to re-cover from him the sum of four hundred and twenty-nine dollars and twenty-two cents ($429.22), upon four several promissory notes; that said claim is just, and there is now due thereon the sum of $429.22. Affiant further says that the defendant fraudulently contracted the debt for which said suit is now brought, in the following manner: That is to say: On the 23d of January, 1884, and for some time prior thereto, and for several months after, said de-fendant was engaged in the business of selling agricul-tural implements at the city of Falls City, in said county and state, and the said Champion Machine Co. was en-gaged in the manufacture of agricultural implements. That said defendant in order to get possession of a large amount of such machinery from said plaintiff company upon credit, and to defraud said company out of the value of the same, on the 23d day of January, 1884, at said Falls City, in said county, stated and represented to the agent of said plaintiff, in writing (and then and there signed said state-ment), that he, said defendant, possessed and was the owner of personal property of the actual value of $7,250, as fol-lows: One frame warehouse, of the value of $600; a stock of implements in said Falls City, worth $3,000; twenty-six Turnbull wagons, worth $1,550; good and col-lectible notes due said defendant from individuals, amount-ing to $1,500; good and collectible accounts due from individuals amounting to $350; and cash on hand and in bank, subject to the check of said defendant, $250; and that the defendant on that date owed only the sum of $1,487.   A copy of said statement is hereto attached and

made a part hereof and marked 'A.' And relying upon said statement and representations so at that time made, said Champion Machine Company sold and delivered to said defendant its machinery and implements to the amount and value of $1,775.50, and took the individual promissory notes of said defendant for the whole of said sum, payable to its president, said Amos Whitely, and the notes sued on in said action are a part of said transaction, and the only notes yet due under said contract, except the first installment of said amount, which came due in October, 1884, and was paid by said defendant, and amounted to about $420. The remainder of said notes given at that time are not yet due, except the ones sued on herein, and no part of said sum of $1,775.50 has been paid except as above mentioned. That the second installment of said notes became due on the first and fourth days of February, 1885. Affiant further states that said statement was false in this, that said warehouse was not of the value of $600, and said stock of implements and wagons were not worth the sum of $4,550, and said statement of the indebtedness at that time exceeded the sum of $2,487, and the said defendant did not have in bank the sum of $250 as stated; all of which was to said defendant at the time well known, and so by him wrongfully and fraudulently made for the purpose of misleading, deceiving, and cheating said company, and procuring their property without paying for the same. That a few weeks before the second installment of the notes given for said property became due, said defendant falsely and fraudulently pretended that he had failed in business and was unable to pay his creditors, and confessed judgment in favor of some of his creditors to the amount of about $1,400, and gave up to them a small amount of personal property to be sold on execution, and falsely and fraudulently pretended that he had given up all of his property. That the property so by him surrendered to some of his other creditors aforesaid has been sold on execution

and realized only about the sum of $776, no part of which has been paid to or applied on the notes sued on herein or any of the notes given in said transaction.

"Affiant further avers that said defendant has property or rights in action which he fraudulently conceals, and alleges the following facts in support of this charge, to-wit: Affiant avers that on the 23d day of January, 1884, said defendant, for the purpose of obtaining a large amount of goods from the said Champion Machine Company as above alleged, made the statements and representations above mentioned, and contained in the paper hereto attached and made part hereof, marked 'A.' That it appeared from said showing that at that time said defendant was the owner of personal property then in his possession in said county of the amount and value of $7,200, and that his total indebtedness at that time was only of the sum total of $1,487. That solely upon the faith and credit of that statement, representation, and showing, the said Champion Machine Company sold to him on credit, and delivered to him about March 20, 1884, goods, wares, and merchandise upon credit as aforesaid, to the amount and value of $1,-775.60, making his assets according to his said statement $9,026. That said defendant received and sold the whole of said goods, wares, and merchandise so received on said statement during the summer of 1884 for more than $2,-000, and has only paid the first installment of said notes which came due in October, 1884, and amounted to only about $420. That the second installment of said notes came due about February 1st, 1885; and about January 1st, 1885, said defendant pretended to fail in business and be unable to pay his debts, and about January 20, 1885, confessed judgment for sundry other creditors, amounting to about $1,400, and claimed and pretended to turn out to his said creditors to be sold on execution on said judgments all of his property; and that the whole of the property so surrendered by him to his said judgment creditors was

sold on execution and only realized about $776. That the homestead of said defendant was in the name of his wife, and worth about $2,000, and was not scheduled nor included in the statement annexed. That said defendant himself has contracted to convey said homestead to one William Hoppe at the agreed valuation of $1,900, and take in payment 174 acres of land in Nemaha county, Kansas, at the agreed valuation of $3,000, said farm being incumbered to the amount of $1,100, which incumbrance said defendant has assumed and agreed to pay. That said homestead is incumbered to the amount of about $300, which said defendant has contracted to pay before said trade shall be definitely consummated. That said farm is unimproved, except that there is about fifty-five acres in cultivation on it. That defendant is now making his arrangements to remove with his family to said farm and reside on it, and that he is intending to fence said land, build a house on it, and make other improvements thereon at once. All of which will involve the expenditure of considerable sums of money, as well as the payment of the mortgage on said homestead. Notwithstanding which fact said defendant has claimed and pretended to affiant and others, and still does claim and pretend, that he had neither money nor property with which to pay or secure the claim of plaintiff or any part thereof. Affiant has repeatedly requested defendant to exhibit his books of accounts so that affiant could see what had become of his property and money, but defendant always refused to do so, or make any showing whatever as to what had become of his money or property. That just before defendant pretended to fail, and in the month of January, 1885, he (defendant) took out of his stock of implements the following described articles, to-wit: One corn drill, two iron beam Sterling plows, one riding sulky plow, one walking cultivator, one corn sheller, one corn planter, one wheat drill, one harrow; and stored the same in a barn about a mile from the city

of Falls City, and about two miles from his residence, and neither surrendered them to his creditors, nor informed his creditors of their existence or whereabouts. And affiant says that it was the intention of said defendant to allow said machinery to remain so stored and secreted until he would have an opportunity to remove the same to his said farm in Kansas. Affiant further says that said defendant from the 23d of January, 1884, to January 1, 1885, was engaged in a profitable business, and made money therein, and, so far as affiant can learn, met with no losses or reverses of any kind. Affiant therefore asks that an order of arrest may issue against said defendant, and that he be held to bail in the sum of $858.44.

"JAMES M. ANTHONY.

"Subscribed in my presence and affirmed to before me this 12th day of March, 1885.

"J. B. COUPE,
"County Judge."

This application is in the nature of a demurrer to the facts stated in the affidavit. That is, do the facts stated *prima facie* show that the petitioner fraudulently contracted the debt? There is very much in the affidavit that is unnecessary; but stripped of all surplusage the facts stated amount to this: That in order to induce the Champion Machine Co. to sell him goods on credit, the petitioner, in January, 1884, made a detailed statement to them in writing of the total amount of his assets and debts, from which it appeared at that time the total amount of his assets was the sum of $7,250, and of his debts, $1,487. That upon receiving this statement, the company relying upon it sold him goods to the amount of $1775.76 upon credit, making his total assets more than $9,000. It is also alleged that from the time the statement was made until January 1st, 1885, the petitioner " was engaged in a profitable business, and made money therein;" and so far as the

affiant could "learn had met with no losses or reverses of any kind." The facts stated in the affidavit certainly tend to prove that the petitioner fraudulently contracted the debt. If on the 23d of January, 1884, his assets amounted to more than $7,000, which were further augmented by the value of the property received from the plaintiffs and sold, why was he unable to pay his debts on the 1st day of January, 1885? The natural inference is, that he misstated the amount of his property or concealed the amount of his debts. In either case a material misstatement of fact as to the financial ability of the debtor made for the purpose of procuring credit, and in reliance upon which it was obtained, may, if the debtor is insolvent, be sufficient to authorize his arrest upon the ground that he fraudulently contracted the debt. In such case where the affidavit upon which the arrest is based states facts, the legal tendency of which is to make out a case in all its parts, showing that the debt was fraudulently contracted, although the proof may be slight and not entirely satisfactory, the arrest will be valid until set aside by a direct proceeding for that purpose. *Miller v. Brinkerhoff*, 4 Denio, 120. *Ex parte Smith*, 16 Ill., 347. *Stone v. Carter*, 13 Gray, 575. *Nelson v. Graydon*, 3 McLean, 326. *Parker v. Follensbee*, 45 Ills., 478. *Wade v. Judge*, 5 Ala., 130. *Spice v. Steinruck*, 14 O. S., 213. That is, if there is a total failure to state in the affidavit the essential facts necessary to authorize the issuing of the order of arrest it will be void for want of jurisdiction to issue it. *Loder v. Phelps*, 13 Wend., 48. *Gorton v. Frizzell*, 20 Ill., 291. *Whiting v. Trafton*, 16 Me., 400. *Smith v. Bouchier*, 2 Stra., 993. But where the affidavit has a legal tendency to make out a proper case in all its parts the order is not void nor the imprisonment under it unlawful. The law requires a debtor to act in good faith with his creditors, both in obtaining credit and in applying his property to the payment of his debts. The affidavit in this case states facts sufficient

to require the petitioner to show that he has done this. The writ must therefore be denied.

WRIT DENIED.

REESE, J., concurs.    COBB, CH. J., dissents.